Tilghman C. J.
Charles Catlin, the plaintiff, has brought this action against Samuel Smith, the defendant, for refusing *268 to receive his vote at an election of electors of a president ” and vice president of the United States. The defendant was an inspector of the election, and refused the plaintiff’s vote, because the tax which he had paid prior to the election, had not been assessed on him six months before the election. The plaintiff had called upon the assessor of his ward, and caused himself to be assessed personally, for a county tax, on the 29th October, and paid it the same day. The election Was , held on the 30th of October. The county tax had been laid more than six months before the election. The question depends on thejlst. sect, of the 3cCarticle of the constitution of the Commonwealth, by which it is declared that “ every “ freeman, of the age of 21 years, having resided in the state “ two years next before the election, and within that time “ paid a state or county tax, which shall have been assessed “ at least six months before the election, shall enjoy the rights “ of an elector.” In order to ascertain the meaning of the term assessed, we must consider the mode of taxation prevailing at the time of adopting the constitution, and the sense in which that word had been used in prior acts of assembly.
The system of laying, assessing, and collecting taxes is to be found in the act of the 20th March, 1724-5. (1 Dali. Laws. 209.) An account was taken of all persons and all property subject to taxation. The commissioners and asses-t sors met, and made an estimate of the necessary expenses'of the^ county, for the ensuing year, and then the sum which each individual was to pay, either on account of his property or his person, was fixed, and this was called the-assessment-of each person. That the word assessment was used in this-sense, will appear from several parts of this act, and particularly from the 5th, 10th, 13th, and 16th sections. In the 5th section it is said, that the assessors shall equally, and impartially, assess themselves and all others. The 10th sect, provides that, if any person or persohá shall find him or herself aggrieved with any of the said assessmepts, supposing the same to be unequal, he or they may appeal to the commissioners. The' 13th sect, speaks of collecting and receiving from the persons assessed, the several sums mentioned in the duplicates; and it is enacted in the 16th sect, that if any person, so rated or assessed, shall refuse or neglect to pay the sum so assessed, it shall be lawful for the collector to levy on his goods, &c. The plaintiff insists that the constitution *269 intends a tax laid and assessed on property and persons in general, at least six months before the election. But this will not accord either with the sense in which the words had been generally used, or with the reason for introducing them, into the constitution. The voter is to have paid the tax assessed, not upon others, but himself. A tax assessed upon others, is no tax as to him.
Why was an assessment, six months prior to the election, deemed necessary ? It was not mei-ely to induce the citizens to pay their taxes. The- object was of more importance : It was to secure peace and certainty, and to prevent tumult and confusion at elections. Six months before the election, when the passions were not inflamed with the approaching contest, every man might give in his name to the assessors; and thus a register would be formed, shewing, with certainty, every person who was entitled to a vote : but as the election drew near, the minds of men became heated, and great exertions were made, • attended often with tumult, to procure votes, by causing persons, who had no property, to be assessed. I believe this often took place on the day of election, involved the inspectors and judges in difficulties, for want of time to ascertain the qualifications of men thus suddenly brought to the polls, and, of course, was productive of altercation and hot blood. These were the evils to be prevented, and they will be prevented, ■ if no person is permitted to vote, unless the tax was- assessed on--him six months before .the ele'ction. Our system of’ taxation has been altered, in some respects, since the adoption of the constitution* but the alteration is by no means opposed to my construction. . The commissioners are to cause transcripts of the assessments to be transmitted to the assessors or collectors, on or before the second Monday in'April, in each year, so that the assessment is always completed six months before the general election, which is’.held on the second Tuesday in October. The assessment, being thus closed* it has not been shewn by what authority an assessor has afterwards exercised the right of assessing individuals, who have applied to him near the time of election ; nor has it been shewn how airy assessment can legally be made, without the intervention of the commissioners; yet in the case before us, the assessor appears to have acted independently of the commissioners.' I think proper to mention this, although my opinion is not founded on the irregu *270 larity of the proceeding. It would have made no difference in my mind, if the plaintiff had been assessed by the joint authority of assessors and commissioners. The assessment not having been laid on him, six months before the election, I am of opinion that he had not the right of suffrage.
Yeatses, J.
The true meaning of the constitution of this state must decide the present case. The plaintiff has set out in his declaration, that, being a native citizen of the commonwealth, above the age of 22 years, and resident therein for two years next before the day of the election, and having caused himself to be assessed for a county tax, on the day preceding the election, and on the same day- having paid the same tax, which had been laid, but not assessed upon him, more than six months before the said, election, he did offer himself to the defendant, then inspector of Walnut ward, in th.e city of Philadelphia, as one of the voters of said ward, Wherein he then resided, and offered to prove the said circumstances to the defendant, who absolutely refused him permission to vote.
The defendant has demurred to the declaration, and has assigned for cause, that it is alleged therein, that the tax paid by the plaintiff was assessed only on the day preceding the said election, and not six months before the same, as is required by the constitution and laws of this Commonwealth.
This election was held for the choice óf electors for the purpose of choosing a president and vice president of the United States, at which the citizens qualified to vote for members of the general assembly were declared to be legal voters, by the 1st sec. of the act of the 2d of February, 1802. (3 Smith’s laws, 483.)
By sect. 7 of the declaration of 'rights, under the former constitution of 1776, it is declared, “that all elections ought “ to be free, and that all freemen, having a sufficient evident “ common interest with, and attachment to, the community^ “ have a right to elect officers, or be elected into office.” And by sect. 6, of the frame of government under that instrument, it is provided, “ that every freeman, of the full “ age of 21 years, having resided in this state for the space of “ one whole year next before the day of election for repre- “ sentatives, and paid public taxes during that time, shall enjoy the right of an elector; provided always, that the sons’ *271 “of freeholders, of the age of' 21 years, shall be entitled to “ vote, although they have not paid taxes.”
By sect. 1, of article .3, of our present state constitution, it is declared that, “ In elections by the citizens, every free* “ man, of the age of 21 years, having resided in the state two “ years next before the election, and within that time paid a “ state or county tax, which shall have been assessed at least “six months before the election, shall enjoy the rights of an “ electo?: Provided, that the sons of persons qualified as “aforesaid, between the ages of 21 and 22 years, shall be “ entitled to vote, although they shall not have paid taxes.” The object of these special provisions unquestionably was, in the language of the old constitution, to allow only those to give their suffrages, who “ had a sufficient evident common interest with, and attachment to, the community,” and who, therefore, must necessarily participate in the prosperous or adverse fortunes of the republic. But the question here is, whether the word assessed, in this first section, is to be referred to a general or an individual tax ? I clearly think it must be taken in the latter sense.
The convention, who formed the last constitution, had the-whole system of taxation before them, and state and county taxes were then in full operation. They could not be ignorant that rates and assessments were considered in former laws as synonimous expressions ; as in the old “ Act for raising county rates and levies,” passed 20th March, 1724. sect. 5. 10. 16. (1 Dall. St. Laws, 209.); in the supplement thereto of ,15th August, 1732, sect. 2. (Ib. 282.); in another supplement of 1st October, 1779, sect. 1. 6. (Ib. 807.), and in the “.Act to raise effective supplies for the yean 1782,” passed 27th March, 1782, sect. 9. 11. 18. 22. (2 Ib. 4.) The term assessment is frequently applied to the rates wherewife individuals are taxed, while the laying of a tax is made referable to the quotas payable by a county or township. But why this sedulous attention in increasing the time of resi* .dence within the state from one to two years ? Why were not the convention satisfied with the expressions in the former constitution, paying public taxes within the year, as .a pre-requisite in the voter? . Was not the instrument model-led as we find it, to add to the security of the government by the voter’s being .required to.give, unequivocal evidence of his common, interest with, and attachment to, the Com *272 monwealth ? One, otherwise qualified, who justly prizes the value of an elective franchise, can readily have his name enrolled, by the proper officer, in his list of taxables, six months before the election ; but it may lead to great abuses, if this may be procrastinated to the eve of an election. I cannot see the propriety of saying, that a citizen has paid a county tax, assessed within a given time, on his particular ward or township, unless his portion thereof has been previously fixed and made certain. Besides, the word assessed implies in itself a lawful assessment, and a tax laid on the day immediately preceding the election, (on the 29th October ,) cannot be reconciled with the provisions in the 7th section of the act of 11th April, 1799, “ for raising and collecting county rates and levies.” (3 Sm. Laws, 394.)
. I feel myself fortified in my construction, from a careful perusal of the minutes of the convention, who formed the constitution.
. On the 21st December, 1789, the committee of nine members, appointed on the 11th December, instant, reported the draught of a proposed constitution, wherein article 3, sect. 1, is as follows : “In elections by the citizens, every freeman, of “ the age of 21 years, having resided in the state two years “ next before the days of the election respectively, and paid “ taxes within that time, shall enjoy the rights of an elector. A The sons of freeholders, of the age aforesaid, shall be en- “ titled to vote, though they have not paid taxes.” [Minutes of Convention, p. 42.) The convention having, afterwards, resolved itself into a committee of the whole body, the proposed constitution was fully debated, and many amendments were made therein. On the 2d February, 1790, the 1st sect. ' of article 3d, was debated and agreed upon, in these words: “ In elections, by the citizens, every freeman, of the age of “ 21 years,- having resided in the state two years néxt before “ the days of election, respectively, and paid public state’or “county taxes within that time, which tax shall have been “assessed upon him at least six months before the election, “shall enjoy the right of an elector.” [Min. of Grand Committee, 81.) The grand committee having reportéd the constitution agreed upon by them, the same was considered, article byarticle, in convention, and debated. The 1st. sect, of the 3d article of the proposed plan of government, being under consideration, on 13 th February following, the word *273 u.public” seems to have been omitted, as superfluous, and the word “ tax” was struck out, on motion, the same having been put to vote. The clause in favour of the sons of persons qualified to vote between the age of 21 and 22 years, was added in the close of this section j and with these amendments the same was adopted by the convention. (Min. of Convent. 93, 94, 95.) On the 18th February, three members were appointed a committee, (Mr. Wilson, Mr. Lewis, and Mr. Findley,) to revise and correct so much of the report of the committee of the whole, as had been adopted by the convention. (Ib. 113.) They made report accordingly, on the 24th February, retaining therein the words “ upon him,” in sect. 1. of art. 3, as it had been agreed on in conventions (Ib. 129.)
In the sfecond session of the convention, on 13th August, 1790, this section was considered, and adopted as it had been reported by the committee of three members, still retaining the words “ upon him.” (Ib. 154.) And no other debate or vote was had on the 1st sect, of art. 3, afterwards; although the other sections of the same article were re-considered. On the 21st August following, it was ordered, that Mr. Wilson, Mr. Lewis, Mr. Smith, Mr. Findley, and Mr. Addison, should be a committee to revise, correct, and arrange so much of the constitution for the government of this Commonwealth, as had been adopted by the convention. (Ib. 176.) And on the 30th August, the committee made their report, omitting the words “ upon him,” in the 1st sect, of the 3d article, (Ib. 198,) which was adopted by the convention, and afterwards on the 2d Septémber, 1790, signed by the members. (Ib. 216.)
It cannot be contended, if the phraseology of the section had remained, as it had been agreed upon in the committee of the whole, revised by the committee of three members, and adopted in full convention, on 13th August, 1790, any doubt could have arisen on the construction thereof: Because, a tax paid by a voter, which had been assessed upon him, must of necessity be individual. Nor can.it be conceived, for a single moment, that the special committee of.five, (of whom four were learned in the law, and three had been the former committee of revisal,) had the slightest intention of changing the sense of the instrument, respecting the-right of franchise, as theretofore settled on debate: Because, they *274 had no such delegated power; they were barely authorised "“to revise, correct, and arrange, so much of the constitution as had been previously adopted by the convention. Should I be permitted to hazard a conjecture, I should suppose that it struck the committee,- that it might be questionable, whether the words upon himf did not narrow the construction to a personal or poll tax, and might lead to a doubt, whether a tax on property was included, and that by leaving out those words, it would clearly extend to both species of taxation. Be this as it may, it is certain that, although the other sections of the 3d article, after the report of the grand committee, and before the final adoption of the whole instrument, no further debate or vote was had on the first section thereof. From the minute detail I have given of the proceedings in the convention, I am irresistibly led to conclude, that it was their true meaning, the payment of an individual tax, assessed at least six months before the day of election, should be an essential pre-requisite to entitle a person to vote, except in the case of the sons of persons properly qualified, between the ages of 21 and 22 yeárs.
Upon the whole matter, I am of opinion, that the demurrer has been supported, and that judgment be entered for the defendant.
Bracrenridge J.
The right of vote, would seem to be considered as a great privilege; else why make the payment of a tax's, sine qua non, or prerequisite of the privilege? The payment of a tax, which had been apportioned to the individual, six months before, is a restriction of the privilege. It is only in this point of view, that the limitation of six months, can be at all material. For it can be no evidence or criterion of residence that is intended, this being provided for under the clause of the two years just preceding. It must have been to provide against the very thing that has here happened, a moneyed man procuring votes, on the spur of the occasion, by getting individuals assessed, and paying a tax for them. In this point of view it is anti-republican, and I am- inclined to reject a construction that will have that operation. The constitution would seem to have thought, I mean the framers of it, and we are bound to think, with good reason, that the getting taxes paid for those who are not disposed, to pay for themselves, was not a set-off in good policy. *275 against the weight it would give to men of property in elections, who could afford to procure votes in-.this way. If this was the reason of this provision in the constitution, it was good. Though it does not necessarily follow, that this would be the effect, but the most probable, that an individual, barely for' the sake of the public good, would come forward, and get himself assessed, and pay a tax at a late day, who had escaped assessment by the oversight of the assessor, or by his own concealment or evasion. It would be more likely that it was at the instance of another, a man who could afford to regard money less than power, and had an interest in procuring votes according to the exigency. Admitting that an esprit de corps, might lead, occasionally, a sans culotte, when a brother sans culotte had set up, to procure an assessment, and to pay a tax; but, in general, I take it, he would be more likely to let the rich man pay it for him,- and to be hauled up to the polls, at the elections. For this reason, I am against the construction as aristocratic, and think the plaintiff, in this case was not entitled to a vote.
Judgment for the defendant.